UNITED STATES BANKRUPTCY COURT                    **FOR PUBLICATION**

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| LORONDA MURPHY, | : | Case No. 04 B 20092 (ASH) |
| Debtor. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BARBARA BALABER-STRAUSS, as                      :
Trustee of the Estate of LORONDA MURPHY,

                                           :

                Plaintiff,

                                           :

     - and -

                                           :

LORONDA MURPHY,                                  Adv. Proc. No. 04-8539A

                                         :

          Intervening Plaintiff,

                                         :

     - against -

                                         :

TOWN OF HARRISON,                                :

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**A P P E A R A N C E S :**

**WILLIAM F. MACREERY, ESQ.**
**Attorney for Plaintiff-Trustee**
**7 Granite Springs Road**
**Granite Springs, NY 10527**

**M. STUART GOLDBERG, LLC**
**Co-Counsel to Debtor**
**By: Marc Stuart Goldberg, Esq.**
**81 Main Street**
**White Plains, NY 10601**

**RATTET, PASTERNAK & GORDON OLIVER, LLP**
**Attorneys for Defendant**
**By: Robert L. Rattet, Esq.**
**James B. Glucksman**
**550 Mamaroneck Avenue**
**Harrison, NY 10528**

**ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

**DECISION ON REAL PROPERTY TAX LAW FORFEITURE AS
FRAUDULENT CONVEYANCE UNDER THE BANKRUPTCY CODE**

Two important issues are presented here. First, may a duly conducted forfeiture of real property by a taxing authority under the New York Real Property Tax Law (the "R.P.T.L.") for nonpayment of taxes without a public sale be avoided as a fraudulent conveyance pursuant to Sections 548 and 550 of the Bankruptcy Code? Second, may the quantum of such avoidance be limited to the amount required to pay creditors and administrative expenses of a debtor's estate? This Court answers both questions in the affirmative.

Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code, which was converted to a case under Chapter 7. The Chapter 7 trustee commenced this adversary proceeding to avoid the tax forfeiture of residential real estate ("the Property") located at 1596 Old Orchard Street, West Harrison, New York by the Town of Harrison, New York ("defendant") as a fraudulent conveyance under Sections 548(a)(1)(B) and 550 of the Bankruptcy Code. Debtor's motion to intervene in the adversary proceeding was granted, and she filed an intervenor complaint. This decision rules on defendant's motions to dismiss the trustee's complaint and the debtor's intervenor complaint and for alternate forms of relief.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and the standing order of reference to bankruptcy judges signed by Acting Chief Judge Robert J. Ward on July 10, 1984. This is a core proceeding under 28 U.S.C. § 157(b).

## Background

The following recitation of facts is based on the parties' court papers and documents referenced therein and does not constitute findings of fact.

On June 29, 2000, debtor purchased the Property for $545,000 financed by a loan in the amount of $480,000 secured by a mortgage on the Property. Debtor did not pay any real property taxes on the Property for the entire three-year period during which she held title. On December 16, 2002, defendant initiated an *in rem* tax proceeding (the "forfeiture proceeding") against the Property in the Supreme Court of the State of New York,

County of Westchester (the "state court") pursuant to Section 1120 of the R.P.T.L. based on $28,673.28 in unpaid real property taxes. Defendant filed and served on debtor by mail a petition and a notice of commencement of foreclosure proceeding that set a redemption deadline of May 9, 2003.

On June 5, 2003, after the redemption date had passed, defendant filed and served a motion for default judgment against the debtor. Debtor filed opposition to the motion, asserting that that she had not received the petition and notice of foreclosure and was unaware of the redemption deadline until after it had already passed. Debtor also argued that the equities favored the state court denying the motion for default judgment and allowing debtor to redeem all tax arrearages because "[i]t would be excessively harsh and inordinately unfair for my family and I to be displaced from our home for the amount due, especially when we are willing to pay all arrears and penalties to bring our tax account current." On August 26, 2003, the state court rejected these defenses and entered an order granting default judgment and awarding legal title of the Property to defendant (the "Judgment").

The Judgment denied debtor's opposition to the motion for default judgment because debtor "fails to set forth any meritorious defense" and found that "Murphy does not dispute that she has failed to pay any property taxes since 2000 and failed to redeem the property within the statutory time period, despite due notice." The state court concluded that "[a]s such, the Court is without legal or equitable authority to extend the time to redeem."

On September 19, 2003, debtor filed a notice of appeal from the Judgment to the Appellate Division, which (inexplicably) is still pending. On September 26, 2003, the Receiver of Taxes and Enforcement Officer for the Town of Harrison conveyed the Property to defendant pursuant to the Judgment. Trustee alleges that the Property had an appraised fair market value in excess of $1,000,000 and that debtor had creditors holding claims in excess of $700,000 at the time of the transfer.

On March 1, 2004, debtor filed for bankruptcy protection. After debtor's case was converted to one under Chapter 7, trustee was appointed and commenced this adversary proceeding. Trustee alleges in the first claim for relief of the amended complaint that debtor did not receive reasonably equivalent value for the transfer under Sections 548 and 550 of the Bankruptcy Code and that the forfeiture rendered the debtor insolvent. Trustee

alleges in the second claim for relief that debtor did not receive reasonably equivalent value for the transfer and that debtor was engaged in business and was left with unreasonably small capital as a result of the transfer. Trustee alleges in the third claim for relief that the forfeiture of a property worth more than $1 million to satisfy claims of less than $30,000 shocks the conscience and that the forfeiture should, therefore, be avoided under Sections 548 and 550 of the Bankruptcy Code. Trustee alleges in the fourth claim for relief that the tax forfeiture constituted a taking in violation of the Fifth and Fourteenth Amendments.

After the Court approved debtor's motion to intervene in the adversary proceeding, debtor filed an intervenor complaint. Debtor's first and second claims for relief essentially mirror trustee's first and third claims for relief, respectively. Debtor's third claim for relief mirrors trustee's fourth claim for relief.

## Discussion

### I.    Motion to dismiss trustee's first claim based on lack of reasonably equivalent value

Relying on a Supreme Court decision, *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), defendant argues that the first claim of trustee's amended complaint must be dismissed because reasonably equivalent value was received for the transfer as a matter of law under Section 548 of the Bankruptcy Code since defendant took possession of the Property pursuant to the requirements of Section 1120 of the R.P.T.L. Trustee responds that *BFP* was limited to mortgage foreclosures and that none of the considerations essential to the holding in *BFP* are present here.

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "must construe any well-pleaded factual allegations in the complaint in favor of the plaintiff." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993), *cert. denied*, 512 U.S. 1240 (1994). *See also Cohen v. Koenig*, 25 F.3d 1168, 1171-72 (2d Cir. 1994) ("When ruling on a motion pursuant to Rule 12(b)(6) to dismiss for failure to state a claim upon which relief may be granted, the court must accept the material facts alleged in the complaint as true."); *Zdenek Marek v. Old Navy (Apparel) Inc.*, 348 F. Supp. 2d 275, 279 (S.D.N.Y. 2004). The motion should be denied unless the plaintiff is not capable of establishing facts maintaining the claim that would warrant relief by the court. *Hartford Fire Ins. Co. v. Califo*rnia, 509 U.S. 764, 811 (1993); *Cohen*, 25 F.3d at 1172; *Ricciuti v.*

*N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991); *Zdenek Marek*, 348 F. Supp. 2d at 279 ("The Court may not dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))).

A.    ***BFP***

Section 548 of the Bankruptcy Code allows the trustee to avoid constructively fraudulent transfers of an interest of the debtor in property made within one year of the filing of the bankruptcy petition. Section 548 reads, in pertinent part:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property . . . that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily— . . .

(B)(i) received less than a reasonably equivalent value in exchange for such transfer . . .; and

(ii)(I) was insolvent on the date that such transfer was made . . ., or became insolvent as a result of such transfer . . .; [or]

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital. . . .

In *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), the Supreme Court addressed the question of reasonably equivalent value under Section 548 of the Bankruptcy Code in the context of a mortgage foreclosure. In that case, BFP took title to a piece of real property subject to the mortgage of a creditor to secure payment of a loan. *Id*. at 533. After BFP defaulted on the loan payments, the creditor properly noticed a foreclosure sale in compliance with state law. *Id*. At the properly conducted foreclosure sale, the property was purchased by a third party for $433,000. *Id*. at 534. BFP filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. *Id*. BFP then filed a complaint to avoid the foreclosure sale as a fraudulent conveyance under Section 548 because BFP alleged that the property was worth $725,000 at the time of the sale. *Id*. The bankruptcy court held that the foreclosure sale was not collusive or fraudulent because it was conducted in compliance with state law. *Id*. The district court, bankruptcy appellate panel, and appellate court all affirmed. *Id*.

On appeal, the Supreme Court held that fair market value cannot be the appropriate measure of "reasonably equivalent value" under Section 548 because "market value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very *antithesis* of forced-sale value." *Id*. at 537 (emphasis original). The Court held that Section 548(a) "requires judicial inquiry into whether the foreclosed property was sold for a price that approximated its worth at the time of sale." *Id*. at 538-39. Recognizing the state mortgage foreclosure regulatory scheme, the Court held that "[a]bsent a clear statutory requirement to the contrary, we must assume the validity of this state-law regulatory background and take due account of its effect." *Id*. at 539.

The Court then examined the history of state foreclosure law:

> Foreclosure laws typically require notice to the defaulting borrower, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and strict adherence to prescribed bidding rules and auction procedures. Many States require that the auction be conducted by a government official, and some forbid the property to be sold for less than a specified fraction of a mandatory presale fair-market-value appraisal. When these procedures have been followed, however, it is "black letter" law that mere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside (*under state foreclosure law*, rather than fraudulent transfer law) if the price is so low as to "shock the conscience or raise a presumption of fraud or unfairness."

*Id.* at 542 (emphasis in original; citations omitted).

The Court noted that Congress has the power to override state foreclosure law pursuant to its constitutional grant of authority over bankruptcy. *Id*. at 543. However, the Court held that "[t]o displace traditional state regulation in such a manner, the federal statutory purpose must be 'clear and manifest.'" *Id*. at 544. The Court concluded that "[o]therwise, the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law." *Id*. at 544-45.

Examining the state interest at issue, the Court stated that "'the general welfare of society is involved in the security of the titles to real estate' and the power to ensure that security 'inheres in the very nature of [state] government.'" *Id*. at 544 (quoting *American Land Co. v. Zeiss*, 219 U.S. 47, 60 (1911)). The Court held that applying the fair market value standard in the context of mortgage foreclosures would affect that "essential state interest" and put the title of all realty purchased at a foreclosure sale "under a federally created cloud." *Id*. The Court also refused to establish a standard, federal "reasonable" foreclosure-sale price because terms for foreclosure sales are not standard due to "how the particular State values the divergent interests of

debtor and creditor." *Id*. at 540.  The Court concluded that "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *Id*. at 545.

The Supreme Court emphasized in *BFP* that its opinion only encompassed mortgage foreclosures of real estate and stated that "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *Id*. at 537 n.3.  The question before this Court is whether *BFP* applies in the case of a tax forfeiture pursuant to New York law, in which there is no competitive bidding and no sale whatsoever.

**B.    Application of *BFP* and the importance of competitive bidding**

Courts have applied *BFP* in contexts other than mortgage foreclosures.  In the tax sale context, courts have not simply examined whether applicable state statutory requirements have been met to determine whether reasonably equivalent value was provided.  *See Lord v. Neumann (In re Lord)*, 179 B.R. 429, 434 (Bankr. E.D. Pa. 1995) ("[W]e . . . may not conclude that reasonably equivalent value has been provided simply because the applicable state statutory requirements have been met.").  Instead, courts have compared tax foreclosure procedures to those factors present in *BFP* "to determine if there exist protections equivalent to those present in *BFP*." *Id*.  Courts have done so by comparing the state tax foreclosure procedures to the state mortgage foreclosure procedures to determine "whether each law provides similar protections and notice to the owner and *whether each procedure ensures competitive bidding*." *Russell-Polk v. Bradley (In re Russell-Polk)*, 200 B.R. 218, 221 (Bankr. E.D. Mo. 1996) (emphasis supplied).  *See also Hollar v. Myers (In re Hollar)*, 184 B.R. 243, 252 (Bankr. M.D.N.C. 1995); *Golden v. Mercer Cty. Tax Claim Bureau (In re Golden)*, 190 B.R. 52, 58 (Bankr. W.D. Pa. 1995) ("[T]he protections, rights and remedies afforded a delinquent taxpayer under the PA Tax Law are no less than those afforded a mortgagor under Pennsylvania's mortgage foreclosure law." (quoting *In re Lord*, 179 B.R. at 435)); *McGrath v. Simon (In re McGrath)*, 170 B.R. 78, 81-83 (Bankr. D.N.J. 1994).  Where the same protections are afforded under both mortgage foreclosure and tax foreclosure procedures in the state and competitive bidding is present, courts have held that *BFP* does apply to tax foreclosure procedures.  *Russell-Polk*,

- 7 -

200 B.R. at 221-22; *Hollar*, 184 B.R. at 252; *Lord*, 179 B.R. at 435-36; *Golden*, 190 B.R. at 58; *McGrath*, 170

B.R. at 81. The procedures need not be exactly the same in order to offer similar protections. *See McGrath*, 170

B.R. at 81-82 (holding that New Jersey's tax foreclosure and sale procedure rendered a reasonably equivalent

value even though "there are significant differences in procedure on mortgage foreclosure and tax sale certificate

foreclosure in New Jersey" because both required public notice of the sale to encourage competitive bidding and

ample, though not equivalent, time to exercise equity of redemption).

　　　　　Where competitive bidding is not a component of a tax sale statute, courts have held *BFP* to be

inapplicable. *Sherman v. Rose (In re Sherman)*, 223 B.R. 555, 559 (B.A.P. 10th Cir. 1998). *See also Konjima v.*

*Grandote Int'l Ltd. Liability Co.*, 252 F.3d 1146, 1152 (10th Cir. 2001) ("[T]he decisive factor in determining

whether a transfer pursuant to a tax sale constitutes 'reasonably equivalent value' is a state's procedure for tax

sales, in particular, statutes requiring that tax sales take place publicly under a competitive bidding procedure.")

(applying *BFP* to Colorado's state fraudulent transfer statute because the Tenth Circuit found the statutes to be

"quite similar"). In *Sherman v. Rose*, the Tenth Circuit Bankruptcy Appellate Panel addressed Wyoming's tax

sale statute, which "mandated that the property be sold to a person selected in a random lottery for the amount of

the outstanding taxes; in this case less than $500." 223 B.R. at 559. The Panel rejected the argument that *BFP*

stands for the proposition that as long as a tax foreclosure and sale are conducted in accordance with the law that

reasonably equivalent value was obtained. *Id*. at 559. Instead, the Panel held that *BFP* did not apply because the

tax sale statute in Wyoming did not provide competitive bidding like the Wyoming foreclosure sale statute. *Id*.

　　　　　Defendant cites *Comis v. Bromka (In re Comis)*, 181 B.R. 145 (Bankr. N.D.N.Y. 1994), for

support that BFP applies to all regularly conducted tax foreclosures. The Court in *Comis* held that "[t]he

Bankruptcy Court is without authority to void a tax foreclosure sale conducted in accordance with state law." *Id*.

at 150. However, the Court in *Comis* addressed a tax foreclosure procedure under New York law that did require

a public sale and that has subsequently been repealed. Section 1006 of the R.P.T.L., in effect at that time, stated

that "the county treasurer shall commence the tax sale and shall continue the same from day to day until so much

of each parcel shall be sold as will be sufficient to pay the amount due thereon as specified in such notice."

R.P.T.L. Section 1008, in effect at that time, allowed counties to bid for land at tax sales when there were no other

valid bids, and that was what the county did in *Comis*. The Court in *Comis* did no more than apply *BFP* to the tax

sale context just as other courts have and was not applying *BFP* to a tax forfeiture. *Comis* does not stand for the

broader conclusion that defendant asserts, that *all* tax foreclosures, whether a tax sale or tax forfeiture, are

conclusively for reasonably equivalent value regardless of the specific procedure.

   Courts have held that *BFP* does not apply in the forfeiture context, whether in the strict mortgage

foreclosure or the tax forfeiture context. In *Federal National Mortgage Association v. Fitzgerald (In re

Fitzgerald)*, 237 B.R. 252 (Bankr. D. Conn. 1999), the Bankruptcy Court for the District of Connecticut held that

*BFP* did not apply to Connecticut's strict mortgage foreclosure procedure in which a mortgagee could seize title

to property directly without a sale if the mortgagor failed to redeem within the time period set by the foreclosure

court after mortgagor's default. *Id*. at 266. The Court held that "[n]either judicial oversight nor the technical

ability of the mortgagor to elect a foreclosure by sale in lieu of strict foreclosure makes up for the absence of an

*actual* public foreclosure sale." *Id*. (emphasis in original).

   Applying *BFP* in the tax forfeiture context, the Bankruptcy Court for the District of Connecticut

held in *Wentworth v. Town of Acton*, 221 B.R. 316 (Bankr. D. Conn. 1998), that "[t]he rationale of the cases

extending *BFP* to tax foreclosure sales does not apply to the instant matter because under Maine's forfeiture

procedure for foreclosure of tax liens, the property was transferred without the possibility of judicial oversight,

without competitive bidding, and without a public sale." *Id*. at 319-20. The Court explained that "[w]hile the

forced sale price may be legitimate evidence of the property's value, the amount of a tax lien is *no* evidence

whatsoever of the property's value" because "Maine's forfeiture procedure eliminates rather than redefines the

market." *Id*. at 320.

   The taxing authority in *Wentworth* argued that *BFP* dictates that there must be a "clear and

manifest" statutory intent to displace state regulatory authority. *Id*. at 320. The Court rejected that argument.

The Court stated that *BFP* held that "a 'clear and manifest' federal statutory purpose must exist to displace

traditional state regulation of foreclosure sales because displacement would have a 'profound' effect on the

'essential state interest' of securing titles to real estate." The Court concluded that the taxing authority's "ability

to take title to real property through Maine's forfeiture procedure is not an essential state interest that is

comparable to the state's ability to regulate foreclosure sales" because "Maine law provides other methods by which municipalities can enforce unpaid real property taxes." *Id*. Moreover, the Court held that its ruling that the tax forfeiture could be avoided "did not 'displace' Maine's forfeiture procedure but merely impinges on it to the extent that forfeited properties may be the subject of § 548 fraudulent transfer actions." *Id*.

C.     <u>New York mortgage foreclosure and tax forfeiture law</u>

Pursuant to *BFP* and its progeny, one must compare New York tax forfeiture law to New York mortgage foreclosure law to determine whether New York tax forfeiture law in effect at the time of the transfer provides similar protections and whether both offer competitive bidding. In fact, New York tax forfeiture does neither.

Under New York Real Property Actions and Proceedings Law ("R.P.A.P.L."), a foreclosing mortgagee must serve a copy of the notice of pendency along with a notice of intent to foreclose by registered mail and ordinary first class mail *or* by personal service alone. R.P.A.P.L. § 1402. That notice must set forth the amount of the outstanding balance payable along with penalties and interest and declare that the entire obligation secured by the mortgage to be immediately due. *Id*. The mortgagee then must give notice of the sale at least thirty days prior to it by personal service pursuant to the rules for personal service of a copy of a summons in a civil action, N.Y.C.P.L.R. Art. III. *Id*. § 1406. Only after attempting personal service with "due diligence" and failing can a party serve the notice by "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode" *and* by mailing it to the last known address or actual place of business. N.Y.C.P.L.R. § 308. At any time prior to the commencement of bidding at the sale, the mortgagor may redeem its equity in the property by making payment to the mortgagee of all amounts due under the mortgage plus any accrued interest and fees as well as the costs of sale and reasonable attorneys' fees. R.P.A.P.L. § 1410. The mortgagee must publish a notice of sale once a week for five weeks before the sale or twice a week for four weeks preceding the sale in a newspaper of general circulation distributed in the county in which the property is to be sold. *Id*. § 1410. A mortgage foreclosure sale must be a public auction conducted by "a licensed auctioneer, sheriff, marshal, or court appointed official." *Id*. § 1408.

The procedures for tax forfeiture are different than those for a mortgage foreclosure.  The R.P.T.L. requires service on the property owner by certified mail of the petition for foreclosure and the deadline for redemption by payment of taxes and penalties owed.  R.P.T.L. § 1125.  The R.P.T.L. provides for published notice of foreclosure in at least two newspapers for three non-consecutive weeks in a two-month period.  *Id.* § 1124.  The owner's redemption period expires two years from the date of the tax lien or upon the date specified in the published notice of foreclosure as long as that date is more than two years from the date of the tax lien.  *Id.* § 1110.  The key difference between the two procedures is that New York tax forfeiture law does not require a sale whatsoever, unlike New York mortgage foreclosure proceedings.  If an owner does not redeem or answer in the tax forfeiture proceeding, the taxing authority gets title to the property in fee simple.  *Id.* § 1136.

There are some differences between tax forfeiture procedures and mortgage foreclosure procedures in service, published notice and the deadline for redemption.  Minor differences in these procedures may not warrant a finding that New York tax forfeiture procedure does not offer *similar* protections under *BFP* and its progeny.  However, given the importance of competitive bidding in the application of *BFP* outside the context of mortgage foreclosures, the lack of competitive bidding alone is sufficient to demonstrate that *BFP* does not apply in the case before this Court.  Where property is seized without a sale or competitive bidding, there cannot be a presumption as a matter of law that reasonably equivalent value was received because market forces were completely absent.  Unlike in a mortgage foreclosure under New York law, where the market is redefined, the market is completely destroyed by New York tax forfeiture proceedings.

This Court rejects defendant's argument that *BFP* applies to New York's tax forfeiture law and denies that portion of defendant's motion to dismiss trustee's first claim for relief that relies on *BFP*.  A plaintiff has stated a claim that reasonably equivalent value was not obtained for a property seized by tax forfeiture where the state's procedure for tax forfeiture does not provide for a public sale with competitive bidding.

Certainly, New York State has a strong interest in assuring that its citizens meet their tax obligations and to enforce those obligations when they remain unmet.  However, that interest cannot overcome Congress' policy choice that reasonably equivalent value must be obtained for a transfer of a debtor's property in the bankruptcy context, where the rights of other creditors are prejudiced.  Unlike a mortgage foreclosure and

sale, such as in *BFP*, there is not the essential state interest of assuring security in title following a public sale. Here, a taxing authority seeks to enforce its tax liens not by public sale but instead by seizing title to the Property. Although the Supreme Court in *BFP* recognized that the value obtained in a foreclosure sale may be significantly less than would be obtained if the property were sold under normal circumstances (willing seller, willing buyer), the holding in *BFP* does not support the conclusion that a forfeiture of property is, as a matter of law, for reasonably equivalent value under Section 548 when there are no market forces at work at all.

    The Bankruptcy Code affords taxing authorities no exception, and a taxing authority is bound by the Bankruptcy Code to the same extent as any other creditor. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209 (1983). As the Supreme Court held, "Congress carefully considered the effect of the new Bankruptcy Code on tax collection . . . and decided to provide protection to tax collectors, such as the IRS, through grants of enhanced priorities for unsecured tax claims . . . and by the nondischarge of tax liabilities." *Id.* Although the result here impinges on a state regulatory scheme, it does so only to the extent that the scheme conflicts with the clear dictates of the Bankruptcy Code. The state's interest in enforcing its unpaid tax obligations is recognized by the Bankruptcy Code and, in fact, given higher priority than other creditors' interests. There is no dispute that defendant has the right to enforce its lien and to collect on debtor's tax obligation, and it would be able to do so in the context of debtor's bankruptcy case. Defendant is not denied its very important interest in securing payment of outstanding tax obligations by reason of avoidance of the transfer to the extent necessary to protect other creditors.

**II.**    <u>**Motion to dismiss debtor's intervenor complaint and limit avoidance damages**</u>

    Defendant moved to dismiss debtor's intervenor complaint on the ground that the sole purpose of avoidance powers under Section 550 of the Bankruptcy Code is to benefit the creditors. Based on that same argument, defendant moved that the trustee's avoidance damages be limited to amounts owed creditors and for administrative expenses. Debtor opposes on the ground that as long as there is some benefit to creditors, the entire transaction is avoidable. Trustee opposes, arguing that under the former Bankruptcy Act the law was clear that "'the fact that there may be surplus in the estate over and above the amount of claims of creditors is not a

valid basis for limiting the amount of recovery in the trial court,'" quoting 4A COLLIER ON BANKRUPTCY ¶ 70.93[1] (14th ed. 1978), and that there is nothing to suggest the law is different under the Bankruptcy Code. Trustee further argues that debtor should be entitled to a share in any surplus recovery because Section 726 of the Bankruptcy Code specifically provides that property of the estate shall be distributed to the debtor after creditors are paid.  Because these two motions are premised on the same argument, the Court will address both together.

This case is extremely unusual.  If the transfer is completely avoidable under Section 548 and recoverable under Section 550, all creditors and administrative expenses will be paid in full upon the completed liquidation of debtor's estate, and there will be a substantial surplus remaining, based on the alleged value of the Property.  In most Chapter 7 cases, the estate is insolvent and creditors only receive a portion of the amount due them, with no surplus remaining.

In simple terms, the issue is who has the right to the surplus funds as between debtor and defendant.  The parties have focused on whether the Property is fully recoverable or only partially recoverable under Section 550 as "for the benefit of the estate" if trustee and debtor establish that the transfer is avoidable under Section 548.  The debtor argues that she falls within the phrase "for the benefit of the estate" by reason of her right to receive a surplus under Section 726(a)(6).   However, Section 550 also states, in pertinent part, that "*to the extent that a transfer is avoided* under section . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . ." (emphasis supplied).  The italicized language certainly appears to contemplate a partial avoidance, and the question then is what purpose is served, or what did Congress contemplate, by a partial avoidance.

Courts have consistently held that an avoidance action can only be pursued if there is some benefit to creditors and may not be pursued if it would only benefit the debtor.  *Wellman v. Wellman*, 933 F.2d 215, 218 (4th Cir.), *cert. denied*, 502 U.S. 925 (1991) (holding that there is no recovery for the benefit of the estate "'when the result is to benefit only the debtor rather than the estate'" (quoting 4 COLLIER ON BANKRUPTCY ¶ 550.02 n.3 (15th ed. 1979))); *Join-In Int'l (U.S.A.) Ltd. v. New York Wholesale Distributors Corp. (In re Join-In Int'l (U.S.A.) Ltd.)*, 56 B.R. 555, 561 (Bankr. S.D.N.Y. 1986) ("[I]f the recovery of the alleged fraudulent conveyance will solely benefit the debtor it will not be permitted to maintain the proceeding."); 5 COLLIER ON

BANKRUPTCY ¶ 550.02[2] (15th ed. rev. 2004) ("Thus, in general, the trustee or debtor in possession may not

recover the property transferred or its value when the result is to benefit only the debtor rather than the estate.").

There is no dispute that the recovery of any avoidance would benefit the estate in this case.

Instead, both parties cite to cases with language that supports either that "for the benefit of the estate" really

means "for the benefit of creditors only," or that when a transfer is avoidable it is avoidable in its entirety.  Most

of the cases to which the parties cite do not address the issue of partial recovery and cannot be relied upon for that

purpose.

The parties have not addressed how Section 548 might affect analysis of this issue.  Section 550's

language states that property is recoverable only "to the extent that a transfer is avoided under section . . . 548."

In my view the answer to the present issue lies in Section 548 and in the long-standing principle that federal

courts, and bankruptcy courts in particular, should give effect to state law to the extent that it does not conflict

with federal interests.  Forfeiture of property to the taxing authority under the R.P.T.L. for persistent refusal to

pay taxes is a matter of state law, which is heavily invested with public interest for the State of New York and its

local communities.  State law and public interest must be respected except to the extent that federal law

supercedes them under the Supremacy Clause of the Constitution, Art. VI cl. 2.  The Bankruptcy Code is not

concerned with the obligation and rights of taxpayers and taxing authorities under state laws, except (in the

context of this case) to the extent that the bankruptcy objectives expressed in Section 548 must preempt state law.

The bankruptcy objective of the avoidance powers in Sections 544 and 548 is to protect creditors generally from

prejudice resulting from transfers of the debtor's property for less than fair consideration, resulting in diminution

of the debtor's estate available to pay creditors.  That objective can and must be reconciled with state law and

public interest by limiting the measure of avoidance damages under Sections 548 and 550 to the amount necessary

to make creditors of the debtor's estate whole.

The Supreme Court has repeatedly held that "[p]roperty interests are created and defined by state

law."  *Butner v. United States*, 440 U.S. 48, 55 (1979).  *See also Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20

(2000) ("Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law

creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.");

*Nobelman v. American Savings Bank*, 508 U.S. 324, 329 (1993).  Therefore, the Court held that bankruptcy courts

should recognize state law property interests to the extent they do not conflict with a federal interest because

"[u]niform treatment of property interests by both state and federal courts within a State serves to reduce

uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of

the happenstance of bankruptcy.'"  440 U.S. at 55 (quoting *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609 (1961)).

*See also Raleigh v. Ill. Dep't of Revenue*, 530 U.S. at 20 ("'Unless some federal interest requires a different result,

there is no reason why [the state] interests should be analyzed differently simply because an interested party is

involved in a bankruptcy proceeding.'" (quoting *Butner v. United States*, 440 U.S. at 55)); *Nobelman v. American

Savings Bank*, 508 U.S. at 329 ("In the absence of a controlling federal rule, we generally assume that Congress

has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such

'[p]roperty interests are created and defined by state law.'" (quoting *Butner v. United States*, 440 U.S. at 54-55));

*Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) ("In the absence of any controlling federal law, 'property' and

'interests in property' are creatures of state law.").  Courts have recognized this principle in the context of

bankruptcy avoidance actions by refusing to upset state defined property rights to the extent that they do not

conflict with federal bankruptcy interests.  *In re FBN Food Svcs., Inc.*, 82 F.3d 1387, 1396 (7th Cir. 1996)

("[C]ourts regularly have looked to state law . . . to determine how much the recipient of a fraudulent conveyance

can claim in the bankruptcy [and] [w]e think these cases correctly decided." (citations omitted)); *Vintero Corp. v.

Corporacion Venozolana de Fomento (In re Vintero Corp.)*, 735 F.2d 740, 742 (2d Cir.), *cert. denied*, 469 U.S.

1087 (1984) (holding under the Bankruptcy Act that the debtor-in-possession "was given the right to avoid CVF's

security interest in order to protect such third parties, not to create a windfall for [the debtor-in-possession] itself"

and that "[t]o the extent that other creditors . . . are not affected adversely by the enforcement of CVF's security

interest, there is no reason why such interest should not be enforced"); *Coleman v. Community Trust Bank (In re

Coleman)*, 285 B.R. 892, 912 (Bankr. W.D. Va. 2002) (holding that a fraudulent conveyance should be avoided

only to the extent creditors in the bankruptcy case were harmed and otherwise remain enforceable between the

debtors and the recipient because "this result most effectively upholds the policies and specific statutory

provisions of the Bankruptcy Code and the [state laws] to avoid voluntary fraudulent transfers where the rights of

third parties are concerned, but to uphold and enforce them as between the parties themselves").

    This principle is entirely consistent with the Supreme Court's decision in *BFP* where the Court

said (as quoted above) "[a]bsent a clear statutory requirement to the contrary, we must assume the validity of [the]

state-law regulatory background and take due account of its effect," 511 U.S. at 539, and "[to] displace traditional

state regulation in such a manner, the federal statutory purpose must be 'clear and manifest.'"  *Id.* at 544.

    As discussed above in point I, New York tax forfeiture law does conflict with federal bankruptcy

avoidance law on the question of the avoidability of the transfer of the Property insofar as the rights of other

creditors are concerned.  The question here, though, is whether tax forfeiture conflicts with Section 548 as to the

surplus that would remain after paying creditors and administrative expenses in full.  Stated differently, is there

any federal bankruptcy interest under Section 548 that warrants abrogation of debtor's and defendant's pre-

existing legal rights in the surplus as established by the R.P.T.L.?  The answer, plainly, is "no."

    The purpose of fraudulent conveyance law, whether state or federal, and of Section 548 is to

prevent harm to creditors by a transfer of property from the debtor.  *Buncher Co. v. Official Comm. of Unsecured*

*Creditors of Genfarm Ltd.*, 229 F.3d 245, 250 (3rd Cir. 2000) ("The purpose of fraudulent conveyance law is to

make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if

they have been transferred away."); *United States v. Towers (In re Feiler)*, 230 B.R. 164, 169 (9th Cir. B.A.P.

1999), *aff'd*, 218 F.3d 948 (9th Cir. 2000) ("The purpose of § 548 is to preserve assets of the bankruptcy estate for

the benefit of creditors . . . and to prohibit 'the transfer of a debtor's property with either the intent or effect of

placing the property beyond the reach of its creditors.'" (citations omitted)); *Bear, Stearns Sec. Corp. v. Gredd*,

275 B.R. 190, 194 (S.D.N.Y. 2002) ("[T]he purpose of § 548 is to protect the estate itself for the benefit of all

creditors."); *Official Comm. of Unsecured Creditors of Toy King Distributors*, *Inc. v. Liberty Savings Bank, FSB*

*(In re Toy King Distributors*, *Inc.)*, 256 B.R. 1, 127 (Bankr. M.D. Fla. 2000) ("The underlying purpose of this

fraudulent transfer statute is to 'prevent valuable assets from being transferred away from debtors in exchange for

less than fair value, leaving insufficient funds to compensate honest creditors'" (quoting 4 COLLIER ON

BANKRUPTCY ¶ 548.01 (15th ed. 1993)); *Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*, 247 B.R.

51, 114 (Bankr. S.D.N.Y. 1999), *aff'd*, 263 B.R. 406 (S.D.N.Y. 2001) ("The statutory purpose of [Section 548 is] to permit all creditors to share ratably in the proceeds of the estate, notwithstanding pre-bankruptcy transfers that tend unfairly to favor one creditor over another."); *Krudy v. Scott (In re Scott)*, 227 B.R. 834, 843 (Bankr. S.D. Ind. 1998) ("The purpose of fraudulent conveyance law 'is to protect a debtor's unsecured creditors from unfair reductions in the debtor's estate to which creditors usually look for security.'" (quoting *In re Randy*, 189 B.R. 425, 444 (Bankr. N.D. Ill. 1995)); N.Y. DEBTOR AND CREDITOR LAW § 273 (2005) ("Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent *as to creditors* without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." (emphasis supplied)).  Creditors are legally harmed by the transfer of a debtor's assets because the transfer places assets to which they would otherwise be entitled out of their reach.

Fraudulent conveyance laws were not designed to affect the legal relationship between the transferor and transferee.  *In re FBN Food Svcs., Inc.*, 82 F.3d at 1395 ("Many cases interpreting state fraudulent conveyance law say that, once outside creditors have been satisfied, the transaction remains valid between the transferor and transferee."); *In re Cantrell*, 270 B.R. 551, 553 n.5 (Bankr. D. Conn. 2001) ("Under Connecticut law, a fraudulent transfer is valid and enforceable between the parties thereto."); *Rodriguez v. Citibank F.S.B. (In re Nowicki)*, 202 B.R. 729, 736 (Bankr. N.D. Ill. 1996) (holding under Illinois law that "a fraudulent transfer is only voidable, and then only to the extent necessary to satisfy the claims of creditors"); *In re Best Products Co., Inc.*, 168 B.R. 35, 57 (Bankr. S.D.N.Y. 1994), *aff'd*, 68 F.3d 26 (2d Cir. 1995) (holding under New York law that "[b]ecause the fraudulent transfer is voidable by creditors only, it is not remarkable that, as between the parties to the transfer, the law regards the transfer as real and binding."); *Pajaro Dunes Rental Agency, Inc. v. Spitters (In re Pajaro Dunes Rental Agency, Inc.)*, 174 B.R. 557, 595 (Bankr. N.D. Cal. 1994) (holding under California law that "even intentionally fraudulent transfers are valid between the participants, who are presumed to act *in pari delicto*").  In different contexts, courts have recognized the principle that fraudulent conveyance laws were not intended to protect individuals who were not *legally* harmed by the transfer and have refused to upset the transfer to the extent it was legal as between the transferor and the recipient.  *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 637 (2d Cir. 1995) (holding under New York fraudulent conveyance law that "since Petitioners have not even

alleged facts that would render improper the portion of the proceeds *not* paid to the Attorneys, the transaction is not fraudulent, at least as it pertains to this much of the second mortgage"); *Foxmeyer Drug Co. v. General Electric Capital Corp. (In re Foxmeyer Corp.)*, 296 B.R. 327, 342 (Bankr. D. Del. 2003) (holding under Sections 548 and 550 that "only net amounts diverted from, that is damages consequently suffered by the creditor body of, a debtor may be recovered via a fraudulent conveyance action"); *Coleman,* 285 B.R. at 912 (holding under Section 544(b) that the "deeds of trust [that the debtors admitted to fraudulently transferring to a bank] should be avoided to the extent necessary to pay the valid claims of the IRS and [the debtors'] other creditors as well as any deficiency in the bankruptcy estate to pay the administrative expenses of the estate . . ., but that they . . . should otherwise be left in effect for the benefit of the Bank as to any remaining surplus value of the properties they encumber"); *In re Best Products Co., Inc.*, 168 B.R. at 57 (confirming debtor's Chapter 11 plan and holding that "even were an obligation avoided as in fraud of creditors pursuant to section 544(b) of the Bankruptcy Code . . . and section 550 . . . that avoidance would be only for the benefit of creditors and the obligation would still stand ahead of equity"); *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 288 (Bankr. S.D.N.Y. 1990) ("[A] transaction can be avoided under section 544(b) only to the extent the avoidance benefits unsecured creditors.").

There is no federal bankruptcy interest under Section 548 in upsetting state property interests where there is no resulting harm to prepetition or administrative creditors.  Section 548, as a fraudulent conveyance statute, is intended to protect creditors from harm.  Congress could not have intended Section 548 to abrogate state law obligations and allow debtors to avoid the state law consequences of their actions and to reap "a windfall merely by reason of the happenstance of bankruptcy" when debtors cannot claim to have been legally harmed by the transfer.

For example, a debtor/transferor cannot be said to have been legally harmed by a voluntary sale transfer at a price well below market value.  A debtor/transferor who made a gift for no consideration to a family member or friend or charity cannot be said to have been legally harmed by the transfer.  Nor can the improvident landowner be said to have been legally harmed when a taxing authority lawfully seizes property for failure to pay taxes.  Fraudulent conveyance statutes were not intended to protect transferors from their own generosity, stupidity or improvidence, and there is no federal bankruptcy interest in disrupting any legally binding state

property relationships to the extent that creditors or administrative creditors are not harmed under Section 548. The Bankruptcy Code will not be interpreted to allow debtors to avoid the state property law consequences of their actions except to the extent necessary to serve a valid bankruptcy purpose.

In the present case, debtor was not *legally* harmed by the forfeiture of the Property. The transfer was lawfully mandated by New York statute and the New York Supreme Court. The transfer was legal as between debtor and defendant and should remain so unless upset on appeal in the state courts. Surely debtor would be getting "a windfall merely by reason of the happenstance of bankruptcy" if she were allowed to avoid the state law consequences of her failure to pay taxes. On the other hand, to the extent the transfer of the Property was in fraud of debtor's other creditors under the Bankruptcy Code, the transfer cannot stand.

Given the important principle that bankruptcy courts should recognize state law to the extent that it does not conflict with federal interests and Section 548's limited purpose as a fraudulent conveyance law, the trustee in this case has the right to avoid the transfer of the Property as fraudulent but only to the extent necessary to satisfy allowed prepetition and administrative creditor claims, *i.e.*, those *legally* harmed by the transfer.

## III.    Motion to dismiss trustee's third claim[1] based on the "shock the conscience" standard

Defendant moved to dismiss trustee's third claim for relief on the ground that the "shock the conscience" standard allowing reversal of a sale for inadequacy of price does not apply in the context of New York's tax forfeiture law. Because there is no authority demonstrating that the "shock the conscience" standard applies under New York law, defendant's motion to dismiss trustee's third claim for relief is granted.

In *BFP*, the Supreme Court held that "the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law" where there is not a "clear and manifest" purpose to displace it. 511 U.S. at 544-45. Examining the history of state mortgage foreclosure law, the Court stated that when the state procedural requirements have been met "it is 'black letter' law that mere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside (*under state foreclosure law*, rather than fraudulent transfer law) if the price is so low as to 'shock the conscience or raise a presumption of fraud or unfairness.'" *Id.*

---

[1]    Although defendant's superceding memorandum of law requests under "Point IV" that trustee's second claim for relief be dismissed, it is clear that defendant is referring to trustee's third claim for relief in the trustee's amended complaint.

at 542 (emphasis in original; citations omitted).  The Court's holding that the Bankruptcy Code be construed to adopt pre-existing law combined with its emphasis that the "shock the conscience" standard is "*under state foreclosure law*" makes clear that one must look to state law on the point.

Only where state law provides that a foreclosure or forfeiture can be set aside when the price shocks the conscience can a bankruptcy court apply that standard.  *See McCanna v. Burke*, 197 B.R. 333, 337-38 (D.N.M. 1996) ("[I]n the absence of a 'clear and manifest' federal statutory purpose, the Bankruptcy Code must adopt New Mexico law dealing with forfeiture under a real estate contract . . . [and as a result] in order to invalidate a forfeiture provision, there must be a judicial determination that the provision shocks the judicial conscience." (internal citations omitted)).  As the Ninth Circuit held, "Gross inadequacy of price is a ground for setting aside the foreclosure, under *BFP*, if state law so provides, but it is not a federal standard independent of state law enabling a bankruptcy court to set aside a foreclosure sale."  *Lindsay v. Beneficial Reinsurance Co.*, 59 F.3d 942, 948 (9th Cir. 1995), *cert. denied*, 516 U.S. 1074 (1996).

The question, then, is whether under New York law a tax foreclosure can be set aside because the price is so low as to "shock the conscience."  The few cases dealing with this issue under New York law have held that the "shock the conscience" standard does not apply in the context of tax foreclosure.  The Bankruptcy Court for the Northern District of New York held that the "shock the conscience" standard does not apply to tax foreclosure in New York and stated that "[w]hile in the context of mortgage foreclosures, New York State courts have consistently held that inadequacy of price so as to shock the conscience is a sufficient ground for vacating a sale . . . the Court finds no statutory or case law to support a similar application in the context of a tax foreclosure."  *Comis v. Bromka (In re Comis)*, 181 B.R. 145, 149 (Bankr. N.D.N.Y. 1994) (internal citations omitted).  *See also Ellis v. City of Rochester*, 643 N.Y.S.2d 279, 279 (N.Y. App. Div. 1996) ("There is no reported authority in New York for applying the 'shocks the conscience' test to tax sales.").  The Appellate Division of the Supreme Court of New York agreed that the "shock the conscience" standard does not apply and held that "[t]he only issue in tax sale cases is whether the taxpayer received proper notice."[2]  643 N.Y.S.2d at 279.

---

[2]      Although the Appellate Division of the Supreme Court refers to the procedure as a "tax sale," it is clear that the Court is addressing a tax forfeiture.  This is clear from the Appellate Division's conclusion that "[t]hus, where, as here, the taxpayer 'neither attempted to redeem her property nor interposed an answer,' the City of Rochester is

(continued...)

There is no support under New York law that the "shock the conscience" standard applies to tax forfeitures. Trustee proffers no compelling support or reason that it should. All of the cases to which trustee cites for support are either cases involving mortgage foreclosures, a reversal of a judicially confirmed sale, or other states' law and, therefore, are not applicable.

The New York state legislature balanced the state interest of enforcing payment of property taxes and the property owner's interests and made no exception to the tax forfeiture statute. This Court is unwilling to create one when there is no support for doing so under New York law. Defendant's motion to dismiss trustee's third claim for relief is granted.

## IV.    Motion to dismiss trustee's fourth claim[3] based on the Fifth and Fourteenth Amendments

Defendant moved to dismiss trustee's fourth claim for relief on the ground that tax forfeiture pursuant to state law is not a taking for a public purpose and cannot violate the Fifth and Fourteenth Amendments. Debtor responds that when a foreclosure price is so low as to shock the conscience it is a taking in violation of the Fifth Amendment. Trustee did not respond to defendant's motion to dismiss trustee's fourth claim.

The Supreme Court held that "[t]he Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). A tax sale is not a taking for a public purpose because such sale is pursuant to the state's taxing power and not its power of eminent domain. *Indus. Bank of Washington v. Sheve*, 307 F. Supp. 98, 99 (D.D.C. 1969) ("A tax sale is not a government taking for which just compensation must be paid under the Constitution after judicial proceedings."); *Golden v. Mercer Cty. Tax Claim Bureau (In re Golden)*, 190 B.R. 52, 57 (Bankr. W.D. Penn. 1995) ("In a tax sale context, the takings clause is not dispositive nor the appropriate basis for starting an inquiry."); *Fitzgerald v. Neves., Inc.*, 15 Wash. App. 421, 428 (1976)

---

[2](...continued)
entitled to a deed conveying an estate in fee simple absolute and the taxpayer is 'forever foreclosed' of her interest in the property." 643 N.Y.S.2d 279, 279.

[3]    Although defendant's superceding memorandum of law requests under "Point VI" that trustee's third claim for relief be dismissed, it is clear that defendant is referring to trustee's fourth claim for relief in trustee's amended complaint.

("We are hard pressed to find that the 'taking' was for public *use* as opposed to the general purpose of enforcing

payment of justly imposed taxes." (emphasis in original)); *Richardson v. Brunner*, 356 S.W.2d 252, 254 (Ky. Ct.

App.), *cert. denied*, 371 U.S. 815 (1962) (holding under Kentucky's constitution that "[t]he sale is nothing more

than a step in the foreclosure of a lien imposed under the taxing power [and] is not a ground for holding the

statute unconstitutional"); *Sears v. Cottrell*, 5 Mich. 251 (1858) (holding under Michigan's constitution, "That

this act is not an infringement of that clause in the constitution which forbids the taking of private property for

public use, is, I think, obvious, as that clause relates only to the taking and appropriation of property, *as such*, by

right of *eminent domain*, and not to the taking of property in payment of taxes." (emphasis in original)).  "The

purpose of tax sales is not to strip the taxpayer of his property, but to insure the collection of taxes" and to

"collect the fair share from those who have failed to meet their burden."  *Golden*, 190 B.R. at 57.

New York's tax forfeiture statute does not violate the Fifth Amendment.  Pursuant to New York

law, the taxing authority here took possession of the property to satisfy the tax lien on the property created by

debtor's failure to pay any taxes on the property since its purchase.  The Defendant was not "forcing some people

alone to bear public burdens which . . . should be borne by the public as a whole."  Instead, the defendant was

exercising its rights granted under New York law to make debtor meet her burden that *is* borne by the public as a

whole but was *not* being borne by debtor.

The cases to which debtor cites are inapplicable because they relate to whether a sale approved by

the bankruptcy court may be overturned due to inadequacy of price.  Debtor did not cite to one case that shows

the "shock the conscience" standard applies in the case of an alleged Fifth Amendment violation whether under an

argument of the taking of private property for public use or under an argument of deprivation of property without

due process of law.

Defendant's motion to dismiss trustee's fourth claim for relief is granted because trustee has

failed to allege any facts demonstrating that there was a taking for public purpose, since the tax forfeiture at issue

here was pursuant to defendant's taxing power.

**V.**      **Motion to dismiss on the principle of comity and pursuant to the Tax Injunction Act**

Defendant argues that this Court should dismiss the claims brought under Section 548 of the

Bankruptcy Code based on the principle of comity in deference to local taxation and on the Tax Injunction Act,

28 U.S.C. § 1341 ("Section 1341") as an attempt to interfere with state tax enforcement efforts.  Trustee and

debtor respond that the principle of comity and Section 1341 are inapplicable because they do not challenge or

seek to invalidate the tax imposed.

Section 1341 provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any
> tax under State law where a plain, speedy and efficient remedy may be had in the courts of such
> State.

The Second Circuit explained that "[w]hile it is the Tax Injunction Act that prevents federal

courts from giving injunctive relief . . . or declaratory relief . . . as long as there is a plain, speedy and efficient

remedy in state court, it is the principle of comity that prevents a taxpayer from seeking damages in a [28 U.S.C.]

§ 1983 [civil rights] action if a plain, adequate, and complete remedy may be had in state court." *Long Island*

*Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989) (citations omitted).  The Second Circuit

held that there is no significant difference between the two standards and concluded that "'[b]oth phrases refer to

the obvious precept that plaintiffs seeking protection of federal rights in federal courts should be remitted to their

state remedies if their federal rights will not thereby be lost.'"  *Id.* (quoting *Fair Assessment in Real Estate*

*Association v. McNary*, 454 U.S. 100, 116 n.8 (1981)).  In that case, the Second Circuit affirmed dismissal due to

lack of jurisdiction because there were several state remedies which would afford the plaintiff an opportunity to

raise the constitutional objections to the real property taxes imposed.  *Id.* at 431.  *See also Bernard v. Village of*

*Spring Valley, New York*, 30 F.3d 294, 297-98 (2d Cir. 1994) (affirming the dismissal of a constitutional

challenge pursuant to 28 U.S.C. § 1983 because there were adequate state remedies to address plaintiff's

constitutional objections to the taxing authority's assessment).

In this case, the federal bankruptcy rights of trustee and debtor will be lost if this Court dismisses

this adversary proceeding.  Whether a transfer is constructively fraudulent under Section 548 of the Bankruptcy

Code and whether Congress' grant of power to avoid such transfer impinges on state law are federal issues of law that cannot be addressed in state court. Trustee and debtor would have no other venue in which to pursue their claims under Section 548 of the Bankruptcy Code, and if this Court were to dismiss these proceedings their federal rights would be lost.

Furthermore, there is no issue regarding the amount of the assessment or levy of debtor's tax obligation, and all parties acknowledge that defendant has the right to collect the taxes due. Even if trustee were successful at trial and obtained the avoidance of the transfer, defendant may pursue the enforcement of debtor's tax obligation in Bankruptcy Court along with debtor's other creditors.

Defendant's motion to dismiss the claims based on Section 548 of the Bankruptcy Code pursuant to the principle of comity and Section 1341 is denied.

## VI.    Motion to bar relitigation under res judicata, collateral estoppel, and the *Rooker-Feldman* doctrine

Defendant argues that the trustee may not relitigate the judgment of foreclosure and forfeiture of the Property pursuant to res judicata, collateral estoppel, and the *Rooker-Feldman* doctrine. Specifically, defendant argues that the issues whether debtor received due notice and whether the transfer of the Property for the amount of the tax liens shocks the conscience cannot be relitigated. Debtor argues that the issues before this Court were neither addressed nor decided by the state court.

### A.    Res judicata and collateral estoppel

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to "'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 125 S. Ct. 1517, 1527 (2005) (quoting *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523 (1986)). *See also Matushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 373 (1996); *Marrese v. American Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380-81 (1985).

Under New York law, "[c]ollateral estoppel is a component of the broader concept of res judicata, wherein the parties to a litigation and those in privity with them are conclusively bound by a judgment on the merits by a court of competent jurisdiction regarding issues of fact and questions of law necessarily decided

04-08539-ash    Doc 80    Filed 07/22/05    Entered 08/24/05 10:39:56    Main Document
Pg 25 of 34

therein in any subsequent action." *Zimmerman v. Tower Ins. Co. of New York*, 788 N.Y.S.2d 309, 139 (App. Div.

2004). *See also Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500 (1984). Collateral estoppel is narrower

and will prevent relitigation in a subsequent proceeding of issues raised and decided in a prior proceeding when

the party had a full and fair opportunity to contest the issue. *Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir.

1993); *Ryan*, 62 N.Y.2d at 500; *Schwartz v. Public Adm'r of Bronx,* 24 N.Y.2d 65, 71 (1969); *Zimmerman*, 788

N.Y.S.2d at 139; *Chadbourne & Parke LLP v. Warshaw*, 733 N.Y.S.2d 168, 172  (App. Div. 2001).

        In the Judgment, the state court only decided whether debtor was in default, whether debtor failed

to redeem by the redemption deadline, and whether debtor had due notice of the proceedings. The state court

decision is res judicata as to those issues alone. Defendant correctly asserts that trustee or debtor may not

relitigate the forfeiture of the Property whether debtor received due notice. This Court could not reevaluate the

state court's judgment of default in the forfeiture proceeding because the issues therein are res judicata.

        However, contrary to defendant's assertion, the fact that the default judgment of foreclosure and

forfeiture is res judicata does not signify that this Court cannot address trustee's federal bankruptcy claims that the

tax forfeiture is avoidable under Section 548 of the Bankruptcy Code as not being for reasonably equivalent

value. The state court did not and could not have addressed whether reasonably equivalent value was received for

the Property under the Bankruptcy Code and how federal bankruptcy law might impact a tax forfeiture obtained

pursuant to state law. *See Neshewat v. Neshewat (In re Salem)*, 290 B.R. 479, 482 (S.D.N.Y. 2003), *aff'd*, 94 Fed.

Appx. 24 (2004) ("The issue before the Bankruptcy Court was not whether the state court decision was correct,

but whether the state court judgment was dischargeable under § 523(a)(6)."). The state court proceeding

addressed only whether debtor was in default and specifically held that it was without equitable powers to address

debtor's arguments based on the equities. Moreover, debtor had not yet filed for bankruptcy protection, so the

issue whether federal bankruptcy law under Section 548 could avoid a state tax forfeiture could not have been

addressed. These issues are properly before this Court and are not res judicata pursuant to the Judgment.

        Defendant also asserts that the state court addressed whether the amount of the tax liens for which

the property was forfeited was so little as to shock the conscience. The state court made no such determination.

In fact, as noted above, the court specifically held that it "is without legal or equitable authority" because debtor

did not dispute that she had not paid the property taxes and failed to redeem despite due notice. The state court did not address and could not have addressed debtor's argument based on the equities because the court held that it did not have equitable power to extend the time to redeem.

Defendant's motion that the claims under Section 548 and the "shock the conscience" standard are barred by res judicata or collateral estoppel is denied.

B.    **The *Rooker-Feldman* doctrine**

Defendant also argues that the *Rooker-Feldman* doctrine precludes this Court from sitting as an appellate court over the state court's judgment. Trustee and debtor argue that *Rooker-Feldman* is inapplicable because the state court did not address the issue of value, and *Rooker-Feldman* only applies where there is a preclusive effect under res judicata or collateral estoppel.

The *Rooker-Feldman* doctrine is concerned with precluding federal district courts from acting as appellate courts in reviewing state court judgments. *See Exxon Mobil Corp.,* 125 S. Ct. at 1527; *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482-86 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 415-16 (1923). The *Rooker-Feldman* doctrine involves the application of 28 U.S.C. § 1257, which states, in relevant part, that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court."

The Supreme Court recently addressed the scope of the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 125 S. Ct. 1517 (2005). The Court first stated that "§ 1257, as long interpreted, vests authority to review a state-court judgment solely in this Court" and prohibits district court review of state court judgments. *Id.* at 1526. The Court then held that "[t]he *Rooker-Feldman* doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 1521-22. The Court held that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Id.* at 1522.

The Court then examined the scope of the doctrine and held that Section 1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id*. at 1527. The Court explained that "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party. . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id*. (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). *See also Newshewat*, 290 B.R. at 482-83 ("'[W]here a federal plaintiff had an opportunity to litigate a claim in a state proceeding . . ., subsequent litigation of the claim will be barred under the *Rooker-Feldman* doctrine if it would be barred under the principles of preclusion.'" (quoting *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199-200 (2d Cir. 1996))).

In this case, there is an independent claim from that decided in the state court proceeding. The state court proceeding only addressed tax forfeiture under New York law and whether debtor defaulted. In the present adversary proceeding, trustee and debtor seek to assert their federal bankruptcy rights under Section 548 of the Bankruptcy Code. The claim asserted under the Bankruptcy Code is completely independent from the issues in the forfeiture proceeding and could not have been asserted until debtor filed for bankruptcy protection.

Therefore, state preclusion law will determine whether the claims in the present adversary proceeding may be maintained. Because res judicata and collateral estoppel do not preclude trustee and debtor's claims in this adversary proceeding, as concluded above, defendant's motion pursuant to the *Rooker-Feldman* doctrine is denied.

## VII.    Motion to compel trustee to first seek recovery from other assets

Defendant moved to compel trustee to first seek recovery from the assets equitably owned by the debtor prior to pursuing any claim against defendant pursuant to the marshaling doctrine. Debtor and trustee argue that the marshaling doctrine is inapplicable on the facts of this case.

The marshaling doctrine is "an equitable doctrine requiring a senior creditor, having two funds available to satisfy a single debt, to resort first to the fund that is not available to a junior creditor of the same debtor in order to avoid the inequity which would result from the senior creditor's election to proceed against the

only fund available to the junior creditor, thereby preventing the junior creditor from obtaining any satisfaction of its debt." *Walther v. Bank of New York*, 772 F. Supp. 754, 766-67 (S.D.N.Y. 1991). *See also In re Global Svc. Group LLC*, 316 B.R. 451, 463 (Bankr. S.D.N.Y. 2004); *In re Elmwood Farms, Inc.*, 30 B.R. 282, 290-91 (Bankr. S.D.N.Y. 1983). The purpose of the equitable doctrine of marshaling of assets is "'to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security.'" *In re Elmwood Farms, Inc.*, 30 B.R. at 291 (quoting *Meyer v. United States*, 375 U.S. 233, 237 (1963)). *See also Walther*, 772 F. Supp. at 767. The doctrine can only be applied "'when it can be equitably fashioned as to all of the parties'" and "[t]hus the doctrine is not applied when it would prejudice the rights of third parties or involve the lienholder in litigation to recover a fund." *Id*. (quoting *Meyer*, 375 U.S. at 236).

Defendant does not cite to one case where the doctrine of marshaling is applied to a trustee acting pursuant to its power under the Bankruptcy Code to avoid fraudulent transactions nor does defendant argue that the marshaling doctrine applies as it currently exists. Instead, defendant argues that the typical situation in which courts apply the marshaling doctrine is analogous to the situation before this Court.

The doctrine of marshaling is completely inapposite to the case before this Court. The doctrine by its very nature applies when a *creditor* attempts to satisfy its debts and its attempt thereby compromises a junior lienholder's claim against the same asset. A trustee is *not* acting as a creditor or lienholder when it attempts to avoid a transaction as fraudulent pursuant to Section 548.[4] A trustee completing its obligation to pursue claims under the Bankruptcy Code to avoid fraudulent transfers when it is in the interest of the debtor's estate cannot be subject to the doctrine of marshaling at the behest of a creditor who received such property. Such an application of the doctrine is not only novel but would also have far reaching repercussions that would compromise a trustee's ability to use his or her discretion to do what is in the best interests of the estate and would conflict with Congress' policy choice that *all* fraudulent transactions under Section 548 are avoidable.

Because this Court finds that the marshaling doctrine is inapplicable and that its extension to a

---

[4]    It should be noted that a trustee acting under Section 548 is in a very different position than one proceeding under Section 544. In that situation Chief Judge Bernstein held that "[t]he trustee has standing to invoke marshaling because he has the status of a hypothetical lien creditor . . . and the Complaint alleges that the trustee's hypothetical lien in the estate's assets is junior to [the senior creditor's] lien." *In re Global Svc. Group LLC*, 316 B.R. at 463.

trustee acting pursuant to his or her powers under the Bankruptcy Code to avoid fraudulent conveyances under Section 548 is inappropriate, defendant's motion to compel trustee to first seek recovery from other assets is denied.

## VIII.    Motion to vacate or cancel notice of pendency

Defendant has either moved to cancel or vacate the notice of pendency because Section 550 of the Bankruptcy Code allows the Court to order the value of property in a transfer subject to avoidance instead of directing reconveyance of the Property.[5]  Because defendant has failed to allege facts supporting either theory, defendant's motion is denied.

Moving to vacate and moving to cancel a notice of pendency are two different concepts in New York.[6]  A motion to vacate a notice of pendency seeks to vacate a notice of pendency because the requirements of Section 6501 of the New York Civil Practice Law and Rules (the "C.P.L.R.") for issuance of the notice were not met and, therefore, the notice was issued improperly.  See *Zitz v. Pereira*, 965 F. Supp. 350, 355 (E.D.N.Y. 1997). Section 6501 of the C.P.L.R. provides for the filing of a notice of pendency in New York State:

> A notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property, except in a summary proceeding brought to recover the possession of real property.

In order for a notice of pendency to be valid in New York,  "[t]he subject litigation must be one where the relief requested is 'directly related' to the title, possession, use or enjoyment of the real property" and "[t]he plaintiff filing the notice of pendency must claim some 'interest . . . in the land of a defendant which might be lost under the recording acts in the event of a transfer of the subject property' during the litigation.'"  *Zitz*, 965 F. Supp. at 355 (E.D.N.Y. 1997) (quoting *Braunston v. Anchorage Woods, Inc.*, 10 N.Y.2d 302, 305 (1961)).

---

[5]     The title of defendant's motion and memorandum of law states that the defendant is moving "to cancel notice of pendency."  However, the heading and text of the memorandum of law itself states defendant's request that "the notice of pendency should be vacated."

[6]     Rule 64 of the Federal Rules of Civil Procedure require that federal courts look to state law regarding "all remedies providing for seizure . . . of property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action."  *See Ulysses I & Co., Inc. v. Feldstein*, 2002 WL 1813851, at *17 (S.D.N.Y. Aug. 8, 2002) ("Pursuant to Rule 64 of the Federal Rules of Civil procedure, I must look to state law to govern the matter of lis pendens.").

Defendant does not allege that the current adversary proceeding does not affect the title and possession of the Property or that the notice of pendency was improperly issued. Defendant merely argues that the Court *might* order money damages under Section 550 of the Bankruptcy Code. That is not a basis for vacating a notice of pendency in the state of New York.

A motion to cancel a notice of pendency seeks to do so for one of the enumerated reasons in Section 6514 or Section 6515 of the C.P.L.R. *See Weiss v. Alard*, 150 F. Supp. 2d 577, 581 (S.D.N.Y. 2001), *aff'd*, 91 Fed. Appx. 181 (2d Cir. 2004) ("After the filing of a notice of pendency, it is presumed that such was valid . . . and may only be cancelled for one of the reasons listed in CPLR § 6514 or § 6515."). Section 6514 provides, in pertinent part:

> (a) Mandatory cancellation. The court, upon motion . . . and . . . notice . . ., shall direct any county clerk to cancel a notice of pendency, if service of a summons has not been completed within the time limited by section 6512; or if the action has been settled, discontinued or abated; or if the time to appeal from a final judgment against the plaintiff has expired, or if enforcement of a final judgment against the plaintiff has not been stayed pursuant to section 5519.

> (b) Discretionary cancellation. The court, upon motion . . . and . . . notice . . ., may direct any county clerk to cancel a notice of pendency, if the plaintiff has not commenced or prosecuted the action in good faith.

Section 6515 provides:

> In any action other than one to foreclose a mortgage or for partition or dower, the court, upon motion . . . and . . . notice . . ., may direct any county clerk to cancel a notice of pendency, upon such terms as are just, whether or not judgment demanded would affect specific real property, if the moving party shall give an undertaking in an amount to be fixed by the court, and if:

> 1.  the court finds that adequate relief can be secured to the plaintiff by the giving of such undertaking; or

> 2.  in such action, the plaintiff fails to give an undertaking, in an amount to be fixed by the court, that the plaintiff will indemnify the moving party for the damages that he may incur if the notice is not cancelled.

Defendant has not alleged any of the reasons set forth in Section 6514 nor moved that defendant make an undertaking pursuant to Section 6515 that can adequately secure relief to trustee so that the Court might cancel the notice of pendency if the Court were to find such terms just. Defendant's motion to vacate or cancel the notice of pendency is denied.

**IX.**     **Requests to bar equitable relief based on unclean hands and equitable estoppel**

Both trustee and defendant have argued that equitable relief should be denied based on wrongdoing by an adversary. Because neither makes allegations that satisfy the doctrines under which they seek to deny equitable relief, their requests are denied.

**A.**     **Unclean hands**

Trustee argues that defendant should be barred from pursuing any equitable relief due to "unclean hands" because defendant "has brought about an unconscionable forfeiture as the recipient of a fraudulent involuntary transfer of the Debtor's home." Additionally, trustee alleges that defendant and its professionals "have made numerous, material misrepresentations of fact in this Bankruptcy Case." Trustee alleges that Frank P. Allegretti falsely testified under oath that the time to perfect debtor's appeal from the judgment in the forfeiture proceeding had expired. Trustee also alleges that defendant's professionals have misrepresented to the Court the amount of documentation that has been provided by debtor and her affiliates.

A party seeking equitable relief "'must come with clean hands' if relief is to be granted." *Gidatex v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 130 (S.D.N.Y. 1999). Examining the type of misconduct that would warrant the bar of equitable relief, the Second Circuit held that "'while equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.'" *Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998) (quoting *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945)). Courts may deny equitable relief "'where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.'" *Estate of Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996) (quoting *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995)). *See also Gidatex*, 82 F. Supp. 2d at 131 ("Typically, courts that have denied injunctive relief due to plaintiff's unclean hands have found plaintiff guilty of truly unconscionable and brazen behavior."); *Fayemi v. Hambrecht and Quist, Inc.*, 174 F.R.D. 319, 326 (S.D.N.Y. 1997) (holding that a party may be denied equitable relief where the party destroyed

data relevant to the case when the party was on notice of the other side's potential claim).  The party invoking the

doctrine of unclean hands has the burden of proof.  *Gidatex*, 82 F. Supp. 2d at 131.  Whether to apply the doctrine

"rests with the discretion of the court, which is 'not bound by formula or restrained by any limitation that tends to

trammel the free and just exercise of discretion.'"  *Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F.

Supp. 969, 969-70 (S.D.N.Y.), *aff'd*, 983 F.2d 1048 (2d Cir. 1992) (quoting *Keystone Driller Co. v. General

Excavator Co.*, 290 U.S. 240, 245 (1933)) (holding that where a party may be denied equitable relief where that

party has made sworn statements that directly contradict each other so that it is clear that the party fabricated

some testimony).

        Defendant cannot be barred from obtaining equitable relief for foreclosing on the Property where

state law authorized it to do so and where it followed state law.  Such conduct does not involve fraud, deceit,

unconscionability, or bad faith.  Under Section 548(a)(1)(B) the transfer *might* be found to be *constructively*

fraudulent *if* the elements of that statute are met.  A claim of constructive fraud does not require misconduct or

bad intent on the part of the defendant, and no such misconduct or intent to defraud or deceive is alleged here.  As

such, even *if* this Court finds after trial that defendant's conduct here is constructively fraudulent, that does not

demonstrate that defendant engaged in any type of misconduct that warrants denial of equitable relief pursuant to

the doctrine of unclean hands.

        Defendant also cannot be barred from obtaining equitable relief for the misrepresentations alleged

by trustee.  Trustee has not argued that the allegedly false statements or misrepresentations had any detrimental

effect on trustee or the current proceedings.  Trustee also has not alleged that the statements were made with the

intent to deceive or defraud trustee nor proffered any evidence that they were.

        This Court, in its discretion whether to apply the doctrine of unclean hands, does not believe

trustee has met its burden demonstrating that defendant should be denied access to equitable remedies by proving

unconscionable behavior by defendant.  Trustee's request to deny defendant equitable relief pursuant to the

doctrine of unclean hands is denied.

B.        **Equitable estoppel**

Likewise, defendant argues that debtor should be denied relief in the intervenor complaint under the doctrine of equitable estoppel because debtor intentionally failed to pay taxes.  The doctrine of equitable estoppel is completely inapplicable.  As defendant set forth in its memorandum of law, in order to apply the doctrine of equitable estoppel, "the party asserting estoppel must show that the party alleged to be estopped '(1) [engaged in] conduct which amounts to a false representation or concealment of material facts; (2) inten[ded] that such conduct [would] be acted upon by the other party; and (3) [knew] the real facts.'"  *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996) (quoting *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 430 N.Y.S.2d 179 (4th Dept. 1980)).

Defendant has not alleged any facts meeting the elements of the very rule defendant cites. Defendant has not alleged that debtor made any false representation or concealed any facts whatsoever. Defendant has only alleged that debtor intentionally did not pay taxes, which does not amount to fraud or concealment.  Defendant's motion to deny relief to debtor pursuant to the doctrine of equitable estoppel is denied.

## Conclusion

Defendant's motion to dismiss trustee's amended complaint on various grounds is granted in part and denied in part.  Defendant's motion to dismiss debtor's intervenor complaint and to limit the measure of avoidance sought in the trustee's complaint to the total amount of allowed creditor claims and expenses of administration is granted.  Defendant's motions to direct trustee to satisfy creditor claims first from debtor's and debtor's insider's property, abstain from the instant proceedings and vacate or cancel the notice of pendency are denied.

Defendant's counsel is directed to prepare an order consistent with this decision and circulate it

for consent as to form.  Consent to the form of the order by any party is without prejudice to any parties' ability to

contest and appeal from this decision.

Dated:   White Plains, New York
         July 22, 2005


                                        /s/ Adlai S. Hardin, Jr.
                                                U.S.B.J.